1
2
3
4
5
6
7

8
## IN THE UNITED STATES DISTRICT COURT

9
## FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 ANN D. FEIL,                                      No. 2:14-cv-2276-TLN-CMK  PS

12            Plaintiff,

13      vs.                                          <u>FINDINGS AND RECOMMENDATION</u>

14 COMMISSIONER OF SOCIAL
SECURITY,

15            Defendant.

16 _____/

17            Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18 review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19 Pending before the court are plaintiff's motion for summary judgment (Doc. 22) and defendant's

20 cross-motion for summary judgment (Doc. 27).  For the reasons discussed below, the

21 undersigned will recommend the court grant plaintiff's motion for summary judgment or remand

22 and deny the Commissioner's cross-motion for summary judgment.

23 / / /

24 / / /

25 / / /

26 / / /

## I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on August 18, 2011, alleging an amended onset of disability on August 16, 2011, due to depression, atrial fibrillation, cardiomyopathy, right knee problems, hypertension, stress, arthritis, and heat intolerance (Certified administrative record ("CAR") 66, 78-80, 93, 173-74, 189-90). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on February 24, 2014, before Administrative Law Judge ("ALJ") Amita B. Tracy. In an April 28, 2014, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

>    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2013 (Exhibit 4D/1).

    2.    The claimant has not engaged in substantial gainful activity since the alleged onset date (Exhibits 3D-6D) (20 CFR 404.1571 *et seq*).

    3.    Since the alleged onset date of disability, August 16, 2011, the claimant has the following severe impairments: congestive heart failure (CHF); atrial fibrillation (AF); depression; obesity (5'8" and 277 pounds (testimony)); hypertension; and diabetes (20 CFR 404.1520(c)).

    4.    Since the alleged onset date of disability, August 16, 2011, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

    5.    After careful consideration of the entire record, the undersigned finds that since August 16, 2011, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with occasional climbing of ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop kneel, crouch or crawl; no work at heights or any activities that could lead to injury, so no exposure to workplace hazards; no exposure to extreme heat, wetness or humidity; and is able to do simple, routine, repetitive tasks.

    6.    Since August 16, 2011, the claimant has been unable to perform any past relevant work (20 CFR 404.1565).

    7.    Prior to the established disability onset date, the claimant was an individual closely approaching advanced age.  On May 14, 2013, the claimant's age category changed to an individual of advanced age.  (20 CFR 404.1563).

    8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

    9.    Prior to May 14, 2013, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  Beginning on May 14, 2013, the claimant has not been able to transfer job skills to other occupations (See

---

process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

2    10.    Prior to May 14, 2013, the date the claimant's age category
            changed, considering the claimant's age, education, work
3           experience, and residual functional capacity, there were jobs that
            exist in significant numbers in the national economy that the
4           claimant could have performed (20 CFR 404.1569 and 404.1569a).

5    11.    Beginning on May 14, 2013, the date the claimant's age category changed,
            considering the claimant's age, education, work experience, and residual
6           functional capacity, there are no jobs that exist in significant numbers in
            the national economy that the claimant could perform (20 CFR
7           404.1560(c) and 404.566).

8    12.    The claimant was not disabled prior to May 14, 2013, but became
            disabled on that date and has continued to be disabled through the
9           date of this decision (20 CFR 404.1520(g)).

10   (CAR 18-27).  After the Appeals Council declined review on August 7, 2014, this appeal

11   followed.

12                              **II.  STANDARD OF REVIEW**

13           The court reviews the Commissioner's final decision to determine whether it is:

14   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

15   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

16   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

17   (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

18   conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

19   both the evidence that supports and detracts from the Commissioner's conclusion, must be

20   considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

21   Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

22   decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

23   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

24   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

25   Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

26   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

                                             4

1  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

2  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

3  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

4  Cir. 1988).

5                                           **III. DISCUSSION**

6            Plaintiff argues the ALJ erred in three ways.  First, plaintiff contends the ALJ

7  erred in rejecting plaintiff's testimony as not credible. Second, plaintiff contends the ALJ erred in

8  failing to consider medical opinions from her treating physician.  Finally, plaintiff contends the

9  ALJ's decision is not supported by substantial evidence based on a new assessment submitted to

10  the Appeals Council.

11           **A.      Credibility**

12           Plaintiff argues the ALJ failed to properly credit her testimony as to the severity of

13  her symptoms, and failed to provide reasons for finding her only partially credible.

14           The Commissioner determines whether a disability applicant is credible, and the

15  court defers to the Commissioner's discretion if the Commissioner used the proper process and

16  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

17  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

18  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

19  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

20  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

21  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

22  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

23  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

24  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

25           If there is objective medical evidence of an underlying impairment, the

26  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged,

including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms.  See

Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

claimant cooperated during physical examinations or provided conflicting statements concerning

drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

claimant testifies as to symptoms greater than would normally be produced by a given

impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(CAR 22.)

1    After summarizing plaintiff's testimony, the ALJ then stated:

2       Claimant's allegations are partially credible.  The third party
3       statement provided by the claimant is also partially credible as it
        supports the claimant's subjective complaints (Exhibit 3E).  The
4       evidence supports a light RFC with an established onset date of
        May 14, 2013 (age 55).  Claimant suffers from atrial fibrillation,
5       which was first identified in April 2010 (Exhibit 5F/30).  Her
        condition became worse as of November 2013, when she was
6       hospitalized with acute congestive heart failure (Exhibits 38F,
        39F).  The evidence reasonably supports an established onset date
7       of May 14, 2013, which is about six months prior to her November
        2013 hospitalization and coincides with her 55th birthday.

8    (CAR 23.)

9           The undersigned can find no actual reasons for finding plaintiff only partially

10   credible articulated in the ALJ's opinion.  Defendant argues the credibility finding is supported

11   by the record and that plaintiff's statements comport with the RFC.  The undersigned disagrees.

12   The ALJ determined plaintiff was capable of less than light work, and limited her to only

13   occasional climbing, balancing, kneeling, crawling, no work at heights or around hazards or

14   extreme heat, and limited her to simple, routine, repetitive tasks.  The ALJ appears to have

15   accepted some of her testimony, thus limited her to exposure to heat and humidity, but did not

16   accept all of her testimony, such as to her limitations with walking and exhaustion.  Yet, no

17   reasons at all were provided in the opinion.  While the ALJ has discretion, and the court will

18   defer to the ALJ's credibility determination if proper reasons are provided, there must be reasons

19   articulated for the court to evaluate.  See Saelee, 94 F.3d at 522.  Here, no reasons were

20   articulated. Without reasons, the court has no ability to review them to make the determination

21   that the reasons given were proper and supported by the evidence.  This is reversible error.

22          **B.     Medical Opinions**

23          The weight given to medical opinions depends in part on whether they are

24   proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

25   821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

26   professional, who has a greater opportunity to know and observe the patient as an individual,

7

1   than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

2   (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

3   to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

4   (9th Cir. 1990).

5           In addition to considering its source, to evaluate whether the Commissioner

6   properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

7   in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

8   uncontradicted opinion of a treating or examining medical professional only for "clear and

9   convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

10  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

11  by an examining professional's opinion which is supported by different independent clinical

12  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

13  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

14  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

15  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

16  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

17  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

18  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

19  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

20  without other evidence, is insufficient to reject the opinion of a treating or examining

21  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

22  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

23  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

24  see also Magallanes, 881 F.2d at 751.

25          Plaintiff argues the ALJ erred by ignoring her treating physician opinion.  She

26  contends that her treating physicians opined that she was disabled and unable to perform regular

8

1   and customary work.  In addition, she argues the opinions also addressed plaintiff's functioning,

2   most specifically her mobility.  But regardless, the ALJ erred in simply ignoring the opinion

3   entirely.

4            Defendant suggests that although the ALJ did not discuss the opinions, if it was

5   erroneous to not do so, any such failure was harmless error.  Defendant contends that the ALJ's

6   decision reflected the medical evidence, the opinions were consistent with the ALJ's findings

7   that plaintiff could not return to her past relevant work, and the opinions would not have changed

8   the outcome.  The medical opinions only state that plaintiff could not engage in her past relevant

9   work, which is what the ALJ determined.

10           Failing to address a treating physician's opinion is reversible error.  See Garrison

11  v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014).  There are potentially several reasons the ALJ

12  could have rejected plaintiff's treating physician's opinion, but none were given.  This would be

13  reversible error.  The court need not determine whether this error was harmless, as the

14  undersigned has determined this case should be remanded for reevaluation of plaintiff's

15  testimony.

16           However, as the ALJ failed to provide any reasons for rejecting the evidence,

17  instead simply ignoring the evidence, the harmless error standard set forth in  Stout v.

18  Commissioner of Social Security, 454 F.3d 1050, 1056 (9th Cir. 2006), would apply.  Thus, the

19  ALJ's failure to consider the evidence could only be considered the error is harmless if no

20  reasonable ALJ could have reached a different conclusion had the error not occurred. See Stout,

21  454 F.3d at 1056.  Here, the medical opinion and notes at issue are not exceedingly helpful in

22  determining plaintiff's limitations.  However, they are an indication that Dr. Jirasritumrong

23  opined plaintiff was unable to return to her prior work and had limitations.  It does not appear to

24  the undersigned that these medical notes would have necessarily resulted in a different

25  conclusion.  However, upon remand as discussed above, these medical records should also be

26  addressed.

**C.     New Evidence**

Finally, plaintiff contends the ALJ's decision is not supported by substantial evidence based on an assessment by her treating physician, Dr. Dhillon, submitted to the Appeal's Council after the ALJ's opinion was rendered.  The Appeal's Council accepted and considered the new evidence by Dr. Dhillon when reviewing the ALJ's decision.  (CAR 1-2.)  Thus, citing Brewes v. Commissioner of Soc. Sec. Adm., 682 F.3d 1157 (9th Cir. 2012), plaintiff contends the new evidence submitted to the Appeal's Council should be considered by the court to determine that the ALJ's decision is not supported by the evidence.

Defendant argues, also citing Brewes, that the court does not have jurisdiction to review a decision of the Appeals Council.  However, the Ninth Circuit in Brewes specifically held that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." 682 F.3d at 1163 (citing Tackett v. Apfel, 180 F.3d 1094, 1097-98 (9th Cir. 1999)).  That is exactly the situation in this case.  While defendant apparently disagrees with the Ninth Circuit decision, this court is bound to follow precedent.  Defendant's citation to Mayes v. Masanari is not applicable as the situation in that case differs from the one before the court and that in Brewes.  See 276 F.3d 453, 458 (9th Cir. 2001) (finding the appeals council did not address the new evidence submitted after the ALJ's decision as it was not relevant to the issue of disability as of the date of the ALJ's decision.)

As the ALJ did not have the benefit of Dr. Dhillon's opinion, as a treating physician, the ALJ should also review and consider Dr. Dhillon's opinion.  The undersigned does not find it necessary to direct the ALJ as to how much weight to give Dr. Dhillon's opinion at this time, nor whether there are reasons to discount the opinion.  The ALJ should simply be given the opportunity to consider it as this case is should be remanded for other errors as discussed above.

1

### IV.  CONCLUSION

2          Based on the foregoing, the undersigned finds that the ALJ committed reversible

3  error for failing to provide reasons for her credibility finding as to plaintiff's testimony, and will

4  recommend this matter be remanded under sentence four of 42 U.S.C. § 405(g) for further

5  development of the record and/or further findings addressing the deficiencies noted above.

6          Accordingly, the undersigned recommends that:

7          1.      Plaintiff's motion for summary judgment (Doc. 22) be granted;

8          2.      Defendant's cross-motion for summary judgment (Doc. 27) be denied;

9          3.      This matter be remanded for further proceedings consistent with this order;

10  and

11          4.      The Clerk of the Court be directed to enter judgment and close this file.

12

13          These findings and recommendations are submitted to the United States District

14  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

15  after being served with these findings and recommendations, any party may file written

16  objections with the court.  Responses to objections shall be filed within 14 days after service of

17  objections.  Failure to file objections within the specified time may waive the right to appeal.

18  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19

20  DATED:  March 8, 2017

21

22  **CRAIG M. KELLISON**
     UNITED STATES MAGISTRATE JUDGE

23

24

25

26